In the Matter of James David LEDVINKA, Debtor.

Kathleen ADAMO, Plaintiff,

v.

James David LEDVINKA, Defendant.

Bankruptcy No. 91–31393.
Adv. No. 92–3003.

United States Bankruptcy Court,
M.D. Georgia,
Athens Division.

Aug. 13, 1992.

Susan P. Tate, Athens, Ga., for plaintiff.

Ernest V. Harris, Athens, Ga., for defendant.

ROBERT F. HERSHNER, Jr., Chief Judge.

## STATEMENT OF THE CASE

Kathleen Adamo, Plaintiff, filed a complaint on January 21, 1992. James David Ledvinka, Debtor, Defendant, filed his answer on February 13, 1992. Plaintiff filed an amendment to the complaint on April 10, 1992. Defendant filed an answer to the amended complaint on April 17, 1992. A trial was held on July 16, 1992. The Court granted Plaintiff's motion to amend her complaint a second time. At the conclusion of the trial, the Court granted a motion for involuntary dismissal made by counsel for Defendant as to issues under section 523(a)(2) of the Bankruptcy Code.[1] The Court, having considered the evidence presented and the arguments of counsel, now publishes this memorandum opinion.

## FINDINGS OF FACT

Plaintiff and Defendant were married in April of 1967. They have three children. Plaintiff obtained a bachelor's degree in nursing in 1968. She has worked in nursing on and off since receiving her degree. Plaintiff began a master's degree program in nursing in April of 1988.

Plaintiff and Defendant separated in August of 1988. Plaintiff continued in the master's program and worked as much as she could. Plaintiff and Defendant were divorced in January of 1990. Plaintiff obtained her master's degree in nursing in 1991. She has worked full time since then.

At the time of the divorce, Plaintiff's annual income was less than $20,000. Defendant was, and still is, a university professor. His annual salary was about $60,000 when he and Plaintiff were divorced. In addition, Defendant received income from book royalties and business consulting.

In December of 1989, Plaintiff and Defendant executed an "Agreement" concerning their marital affairs. Two of their three children were minors. Plaintiff was granted custody of one minor child, and Defendant agreed to pay monthly child support of $600.[2] Defendant was granted custody of the other minor child. The Agreement provides, in part:

4. PERIODIC ALIMONY. Neither party shall pay to the other any periodic alimony.

. . . .

7. PROPERTY SETTLEMENT. The parties agree that to accomplish an equitable division of the property acquired by mutual effort during the course of their marriage, the following is agreed to:

---

**1.** 11 U.S.C.A. § 523(a)(2) (West 1979 & Supp. 1992).

**2.** This amount will increase from time to time.

[Plaintiff and Defendant divided certain personal property not involved in this adversary proceeding]

. . . .

8. RETIREMENT ACCOUNTS. The Wife shall receive at distribution one-half the present value of the Husband's retirement accounts as of the date of separation and Husband shall be entitled to one-half of the cash of Wife's retirement account she would have received if cashed in on the date of separation. It is further understood and agreed that the division of Mr. Ledvinka's University of Georgia retirement plan is as follows: The value as of the date of separation was approximately $55,779.00 with Mrs. Ledvinka to receive one-half (½) of said retirement plan as of that date. The parties further set forth that they understand that said monies are unavailable for distribution at this time and that the parties contemplate the followint [sic] at the time of distribution. Should Mr. Ledvinka choose to take his retirement plan in a lump sum, he shall pay Mrs. Ledvinka the value of her share (approximately $28,000.00) plus earning[s] thereon until the time of distribution. Mrs. Ledvinka would receive an annuity valued at the annuity value of said retirement contribution, plus the earnings thereon at the date such retirement began. That is if her current balance was $28,000.00 and her portion of the plan earned $10,000.00 by the time of his retirement, she would be entitled to the payments that would equal those available from a single deposit $38,000.00 annuity, payable over a single life based on her age at the time of his retiremenet [sic]. Or in the alternative, he would pay her off that sum of $38,000.00 or such like sum as may be computed by taking the earnings on her portion of the value of the retirement plan as of September 1, 1988. This sets forth the understandings of the parties and is entered into this agreement to be directed to the Court of their understanding should a dispute arise as to the distribution of said retirement plan at the time of his retirement. This is in no way to bind or in any way restrict the teacher retirement system of the State of Georgia and its operation or recognition of this aforesaid agreement.

If the parties cannot agree as to how this paragraph is to be accomplished, then the issue of the division of their retirement accounts will be submitted to the Court, sitting without a jury, for precise formulation.

. . . .

12. *INDEMNITY OF WIFE.* The Husband warrants that, except as otherwise herein specifically provided:

. . . .

(c) He will save the Wife harmless against any debt he is obligated to pay by this agreement and the same shall not be discharged by any proceeding in bankruptcy or otherwise.

Simply stated, the Agreement provides that Plaintiff is to receive $28,000, plus accrued interest, from Defendant's retirement plan when he retires. Defendant was fifty years of age at the time of the divorce. Plaintiff understood that Defendant plans to continue working until he is at least seventy years of age. Defendant's employer does not have a mandatory retirement age. Defendant cannot withdraw the funds in his retirement plan until he retires. He will not receive any benefits until he retires.

Plaintiff considered her interest in Defendant's retirement plan to be her money. She understood that she will not receive any distribution until Defendant retires. She did not consider the distribution to be a debt owed to her by Defendant. Plaintiff and Defendant sent a letter to Defendant's employer at the time of the divorce advising the employer of their settlement. Only Defendant's name is on the retirement plan. The evidence presented does not show that Defendant's employer assigned any portion of the retirement benefits to Plaintiff.

Defendant testified that he intends to pay Plaintiff her portion of the retirement benefits when he retires. He understands that, should Plaintiff die before he retires,

her portion of the retirement benefits will be paid to him and not to her estate.[3]

Defendant filed a petition under Chapter 7 of the Bankruptcy Code on November 4, 1991. He scheduled as unsecured, without priority, a debt owed to Plaintiff in the amount of $39,878. He scheduled personal property in a "Teachers' Retirement System" in the amount of $75,484. The retirement benefits are not scheduled as exempt property.

## CONCLUSIONS OF LAW

■ Plaintiff contends that Defendant should be denied a discharge under section 727(a)(4)(C) of the Bankruptcy Code.[4] That section provides:

> (a) The court shall grant the debtor a discharge, unless—
>
> . . . .
>
> (4) the debtor knowingly and fraudulently, in or in connection with the case—
>
> . . . .
>
> (C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or

Plaintiff contends:

The said Agreement includes a provision whereby the Defendant Debtor agreed not to have any of his obligations under the Agreement discharged in bankruptcy. Plaintiff relied on this statement, giving up her rights to alimony and property in return for such retirement funds.

At trial, Defendant testified that he intends to pay Plaintiff her portion of the retirement benefits when he retires. The Court is not persuaded that Plaintiff has carried her burden under section 727(a)(4). "The conduct of the debtor under section 727(a)(4)(C) must be done 'in or in connection with the case' in which he is presently a debtor...." 4 *Collier on Bankruptcy* ¶ 727.06 (15th ed. 1992). Section 727(a)(4)(C) does not address itself to the separation agreement and the divorce action between Plaintiff and Defendant.

Plaintiff contends that she is entitled to one-half of the retirement benefits as her sole and separate property. She contends that her entitlement is not a debt owed by Defendant and, therefore, is not a dischargeable obligation. Alternatively, Plaintiff argues that her entitlement is in the nature of alimony, support, or maintenance and is not dischargeable under section 523(a)(5) of the Bankruptcy Code.[5]

"The Bankruptcy Code excludes from the bankruptcy estate property of the debtor that is subject to a restriction or transfer enforceable under 'applicable nonbankruptcy law.' 11 U.S.C.A. § 541(c)(2)." *Patterson v. Shumate*, — U.S. —, 112 S.Ct. 2242, 2245, 119 L.Ed.2d 519 (1992). For example, an ERISA "pension plan shall provide that benefits provided under the plan may not be assigned or alienated, 29 U.S.C. § 1056(d)(1)." *Patterson v. Shumate*, — U.S. at —, 112 S.Ct. at 2247.

If Defendant's retirement plan prohibited any assignment or alienation, Defendant's retirement benefits may not have been property of the bankruptcy estate. A copy of the retirement plan was not presented at trial. The Court, therefore, declines to rule on whether Defendant's retirement benefits became property of the bankruptcy estate.

■ A number of courts have considered whether a former spouse's pension entitlement was a "debt" when the bankruptcy case was filed. Most courts have found that the former spouse's interest in the debtor's pension plan became absolute upon the granting of the divorce and thereafter was the "sole and separate property" of the nondebtor spouse. *Resare v. Resare (In re Resare)*, 142 B.R. 44 (Bankr.D.R.I. 1992).

---

3. The Court does not need to determine whether Plaintiff's estate would be entitled to her portion of the retirement plan. The Court expresses no opinion on this matter.

4. 11 U.S.C.A. § 727(a)(4)(C) (West 1979).

5. 11 U.S.C.A. § 523(a)(5) (West 1979 & Supp. 1992).

In *McNierney v. McNierney (In re McNierney)*,[6] the debtor and his former wife were divorced four years prior to the debtor first receiving a retirement payment from his employer, IBM. The marital settlement agreement provided, in part:

> [T]he parties hereto acknowledge that during the entire 23 years and 5 months of their marriage, [the husband] has been employed with IBM, and it is agreed that at such time as [the husband] retires, or otherwise qualified [sic] for retirement benefits, [the former wife] shall be entitled to receive, as her community property interest an amount equal to ½ times
> $$\frac{23.5 \text{ years.}}{X}$$
> X being the
> total number of years' service [the husband] is credited with by IBM for retirement purposes.

97 B.R. at 650.

The bankruptcy court held that the former wife's entitlement to a portion of the retirement benefit was her separate property and not a nondischargeable debt for alimony or support. The bankruptcy court noted that the debtor was a mere conduit for the payment of retirement benefits from IBM.

In *Zick v. Zick (In re Zick)*,[7] the state court had awarded the former wife an interest in the debtor's pension fund. The Chapter 7 debtor asked the bankruptcy court to determine the dischargeability of the award pursuant to section 523(a)(5). The bankruptcy court stated:

> The husband argues that the divorce court's award of a portion of his pension fund constitutes property division, and any obligation thereunder is discharged.... But the divorce court did not create an obligation of the husband to the wife as part of a property division

that he can now discharge. The court awarded Peggy Zick a portion of the pension fund in her husband's name; it became her property, not his. *In re Stolp*, 116 B.R. 131 (Bankr.W.D.Wis. 1990); *In re Farrow*, 116 B.R. 310 (Bankr.M.D.Ga.1990).

123 B.R. at 829.

Most courts have held that an award to the wife of a portion of her husband's government or military pension became the wife's sole and separate property. *See Bush v. Taylor* 912 F.2d 989, 993 (8th Cir.1990); *Benich v. Benich (In re Benich)*, 811 F.2d 943, 945 (5th Cir.1987); *Chandler v. Chandler (In re Chandler)*, 805 F.2d 555 (5th Cir.1986), *cert. denied*, 481 U.S. 1049, 107 S.Ct. 2180, 95 L.Ed.2d 837 (1987); *Stolp v. Stolp (In re Stolp)*, 116 B.R. 131 (Bankr.W.D.Wis.1990); *Corrigan v. Corrigan (In re Corrigan)*, 93 B.R. 81 (Bankr.E.D.Va.1988); *Mace v. Mace (In re Mace)*, 82 B.R. 864, 868 (Bankr.S.D.Ohio 1987); *Manners v. Manners (In re Manners)*, 62 B.R. 656 (Bankr.D.Mont.1986); *Hall v. Hall (In re Hall)*, 51 B.R. 1002 (S.D.Ga.1985).

Some courts have held that postpetition pension payments due a former spouse are not debts until each payment is due. These postpetition debts are not subject to discharge under section 727(b) of the Bankruptcy Code.[8] *Bush v. Taylor*, 912 F.2d 989, 993 (8th Cir.1990); *Teichman v. Teichman (In re Teichman)*, 774 F.2d 1395, 1398 (9th Cir.1985).

In *Farrow v. Farrow (In re Farrow)*,[9] the state court had made an equitable division of the marital property as follows:

> "The plaintiff shall have an interest in one half of the net retirement annuity benefit paid to the defendant as a result of his enlistment in the United States

---

6. 97 B.R. 648 (Bankr.S.D.Fla.1989).

7. 123 B.R. 825 (Bankr.E.D.Wis.1990).

8. 11 U.S.C.A. § 727(b) (West 1979). This section provides:
   (b) Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter, and any liability on a claim that is determined under section 502 of this title as if such claim had arisen before the commencement of the case, whether or not a proof of claim based on any such debt or liability is filed under section 501 of this title, and whether or not a claim based on any such debt or liability is allowed under section 502 of this title.
   11 U.S.C.A. § 727(b) (West 1979).

9. 116 B.R. 310 (Bankr.M.D.Ga.1990).

Navel [*sic*] Reserve upon the same being paid to the defendant at such time he shall be eligible to receive the same. The defendant shall further make an election on the spouse benefit program in favor of the plaintiff Gay Ann Peterson [*sic*] Farrow if the same is available to him under regulations governing such election."

116 B.R. at 311.

The debtor was not entitled to any pension payments at the time of the divorce decree or when he filed his Chapter 7 bankruptcy case. He began receiving pension payments during the pendency of his bankruptcy case. Judge Laney, writing for this Court, stated:

It is, however, clear from the decree and the stipulations of counsel that the Plaintiff's entitlement to one half of the net retirement annuity was fixed prepetition in the divorce judgment and decree, but that the entitlement to receipt of the same did not come into being until the Defendant qualified for his annuity apparently early in 1990 well after the filing of the bankruptcy case. The court finds that pursuant to 10 U.S.C.A. § 1408 the obligation to pay the same to the Plaintiff is an obligation of the Secretary of the Navy after effective service on the Secretary of a copy of the court order in question. Under these circumstances, the court finds that the obligations set forth in the pertinent portion of the final judgment and decree in question was not a debt of the Debtor at the time the bankruptcy case was filed or at this time. The interest in one half of the net retirement annuity benefit is the sole and separate property of the Plaintiff. *In re Chandler*, 805 F.2d 555 (5th Cir.1986); *In re Teichman*, 774 F.2d 1395 (9th Cir. 1985); *In re Hall*, 51 B.R. 1002 (S.D.Ga. 1985); *In re McNierney*, 97 B.R. 648 (Bankr.S.D.Fla.1989).

Alternatively, the court finds that if there is an obligation on the Debtor to make the payment in question, he holds any post petition payment that he might receive on his retirement benefit in constructive trust for the Plaintiff to the extent of one half of such net benefit.

116 B.R. at 312.

In the case at bar, the settlement agreement provides that "[t]he Wife shall receive at distribution one-half the present value of the Husband's retirement account as of the date of separation...." Plaintiff considered her interest in Defendant's retirement benefits to be her money. Defendant testified that he intends to pay Plaintiff her portion when he retires.

The Court is persuaded that Plaintiff's portion of Defendant's retirement benefits is her sole and separate property. The Court, therefore, does not consider Plaintiff's contention that her entitlement is a nondischargeable debt.

An order in accordance with this memorandum opinion will be entered this date.

### ORDER

In accordance with the memorandum opinion entered this date; it is

ORDERED that the request of Kathleen Adamo, Plaintiff, that the Court deny the discharge of James David Ledvinka, Defendant, under section 727(a)(4)(C) of the Bankruptcy Code [1] hereby is denied; and it is further

ORDERED that the Court hereby determines that Plaintiff's portion of Defendant's retirement benefits in his retirement plan at the University of Georgia is her sole and separate property.

SO ORDERED.

---

1. 11 U.S.C.A. § 727(a)(4)(C) (West 1979).